**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT**

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

**AGENT BACKGROUND**

1.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.   I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.   Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.      During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.  I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.  I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes.  I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire.  In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking.   I have received hundreds of hours of training in the field of narcotic investigations and enforcement.   Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3.      I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

**PURPOSE OF AFFIDAVIT**

5. I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the renewed used and monitoring of a GPS tracking device currently installed on the following vehicle (hereafter, "Target Vehicle"):

a. A blue 2006 Cadillac SRX currently bearing Massachusetts license plate 4BFR54 and bearing vehicle identification number 1GYEE637560129860.

6. Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] by Melissa Rey Ramos AKA "Ralphy" (hereafter, "RAMOS"), Katie Girgus (hereafter, "GIRGUS"), and Nickolas Starkey (hereafter, "STARKEY"), Antonio Aguasivias (hereafter, "AGUASIVIAS"), Dari Rafael Baez Marinez AKA "Chino" (hereafter, "BAEZ MARINEZ")—believed to be members of a drug trafficking organization—and others yet unknown, and probable cause to believe that the use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know

about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

**PROBABLE CAUSE**

8.      This Court previously authorized the installation of a tracking device on the Target Vehicle on August 10, 2022, September 23, 2022, December 2, 2022, January 13, 2023, and then again on February 26, 2023. The most recent tracking warrant authorizes the use of the tracking device on the Target Vehicle until April 12, 2023. The prior tracking warrant affidavits are attached hereto as Exhibit A and incorporated herein by reference.

9.      Since the authorization of the installation of the device on the Target Vehicle, additional observations of the Target Vehicle provide probable cause that renewed monitoring of the Target Vehicle will lead to further evidence that AGUASIVIAS and other members of the DTO under investigation are committing the Target Offenses, as follows:

Controlled Buy Involving Target Vehicle on March 7, 2023

10.      On March 7, 2023, at approximately 5:57 pm, at the direction of law enforcement, CW-1[1] was instructed to place a phone call to ███████-9059. This number had previously been identified by CW-1 as the dispatch phone number for known DTO dispatcher Antonio

---

[1] CW-1 has been cooperating with law enforcement since approximately June 2022. Prior to agreeing to cooperate with law enforcement, CW-1 was arrested while attempting to purchase crack cocaine. In exchange for possible lenient treatment with respect to those charges, CW-1 agreed to cooperate with law enforcement officers and provided them with information about various drug traffickers. Since becoming a cooperating witness, CW-1 has utilized controlled substances on one occasion; CW-1 immediately admitted to the violation. Nevertheless, CW-1 has provided information related to criminal activity which has been corroborated by law enforcement and other witnesses – specifically the identification of individuals distributing controlled substances. Although CW-1 has committed criminal violations since becoming a cooperating witness, law enforcement still believes the surreptitious recordings conducted by CW-1 accurately capture evidence of criminal activity by others. CW-1 has convictions for driving related offences and possession of controlled substances [F] (NH RSA 318-B:2, I). CW-1 was also recently arrested on an electronic bench warrant from a 2006 charge for forgery.

AGUASIVIAS. AGUASIVIAS answered the phone call and informed CW-1 that he had to meet with several people first and then he would meet with CW-1. CW-1 directed AGUASIVIAS to the area of Ash St. and Webster St. in Manchester, NH. CW-1 informed AGUASIVIAS they would need a "finger of down" (10 grams of heroin/ fentanyl).

11.     Following this phone call CW-1 was dropped off in the area of Ash and Webster St. At approximately 6:17 pm, law enforcement observed Target Vehicle traveling north on Ash St. At approximately 6:18 pm CW-1 was observed entering into the front right passenger seat of Target Vehicle. Target Vehicle then traveled a short distance to the Rite Aid parking lot at 53 Hooksett Rd where then CW-1 exited the vehicle and Target Vehicle left the area. Surveillance units were able to identify the driver of Target Vehicle to be known DTO member Dari Rafael BAEZ MARINEZ aka "CHINO".

12.     CW-1 was picked back up by investigators and immediately provided them with two tied off plastic bags containing a tan powdered substance. Based off training and experience this tan powder was believed to be heroin/ fentanyl, which was later weighed to be approximately 11 grams. CW-1 informed investigators that when they entered into Target Vehicle, BAEZ MARINEZ was on the phone with AGUASIVIAS. CW-1 advised the product was in the cup holder of the center console; they exchanged the product and the money shortly after CW-1 entered into the Target Vehicle.

13.     Investigators have discovered the Target Vehicle is very difficult to surveil based on the many individuals operating this vehicle, the intentional change of parking spots throughout the city, and increased level of counter surveillance utilized by members of this drug trafficking organization.

## USE OF TRACKING DEVICE TO FURTHER THE INVESTIGATION

14.    Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute narcotics often use motor vehicles to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances use motor vehicles to transport controlled substances to various locations to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement to effectively conduct surveillance. The presence of a tracking device on a motor vehicle engaged in drug-related activity is beneficial because it allows law enforcement to track the movement of the vehicle effectively, while decreasing the chance of detection.

15.    The installation and monitoring of a tracking device on the Target Vehicle would expand the limited capabilities of this investigation and would enhance investigators' ability to follow the movements of GIRGUS, STARKEY, RAMOS, AGUASIVIAS, BAEZ MARINEZ and any unidentified co-conspirators while decreasing the chance of detection.   This affiant and other involved investigators plan to utilize this information to assist with the possible interdiction of future drug deliveries as well as to assist in identifying sources of supply, customers, stash locations, and locating other evidence that will assist us in learning the full nature and scope of the aforementioned individuals' criminal operation.

## AUTHORIZATION REQUEST

16.    Based upon the facts set forth above, I respectfully request that the Court issue the

6

proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to, during both daytime and nighttime hours,[2] install/maintain a mobile tracking device in or on the Target Vehicle within the District of New Hampshire within ten (10) calendar days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

17.    Because the occupants of the vehicle may sometimes park the Target Vehicle on private property, I further request authorization to enter onto private property and/or move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.   I request authorization to monitor the tracking device for a period of forty-five (45) days following the installation of the device, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

18.    In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing notification sooner may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing sooner notice while the operation is still in covert status would seriously jeopardize the ongoing investigation by prematurely revealing its existence and

---

[2] Without authorization to install the tracking device during nighttime hours, investigators would likely be unable to surreptitiously install the device on the Target Vehicle.

giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.



/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation


The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.


Date: Apr 11, 2023

Time: 7:44 PM, Apr 11, 2023

The Honorable Andrea K. Johnstone
United States Magistrate Judge

**EXHIBIT A (Prior Affidavits)**

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT**

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

**AGENT BACKGROUND**

1.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.   I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.   Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.      During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.   I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.   I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes. I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire. In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking. I have received hundreds of hours of training in the field of narcotic investigations and enforcement. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3. I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2

**PURPOSE OF AFFIDAVIT**

5. I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the renewed used and monitoring of a GPS tracking device currently installed on the following vehicle (hereafter, "Target Vehicle"):

   a. A blue 2006 Cadillac SRX currently bearing Massachusetts license plate 4BFR54 and bearing vehicle identification number 1GYEE637560129860.

6. Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] by Melissa Rey Ramos AKA "Ralphy" (hereafter, "RAMOS"), Katie Girgus (hereafter, "GIRGUS"), Nickolas Starkey (hereafter, "STARKEY"), and Antonio Aguasivias (hereafter, "AGUASIVIAS") — believed to be members of a drug trafficking organization—and others yet unknown, and probable cause to believe that the use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

**PROBABLE CAUSE**

8.      This Court previously authorized the installation of a tracking device on the Target Vehicle on August 10, 2022, September 23, 2022, December 2, 2022, and then again on January 13, 2023. The most recent tracking warrant authorizes the use of the tracking device on the Target Vehicle until February 27, 2023. The prior tracking warrant affidavits are attached hereto as Exhibit A and incorporated herein by reference.

9.      Since the authorization of the installation of the device on the Target Vehicle, additional observations of the Target Vehicle provide probable cause that renewed monitoring of the Target Vehicle will lead to further evidence that AGUASIVIAS and other members of the drug trafficking organization under investigation (the "DTO") are committing the Target Offenses, as follows:

Surveillance of Target Vehicle on January 18, 2023

10.      On January 18, 2023, at approximately 10:39 AM detectives were monitoring a mobile electronic device (GPS tracker) which indicated that Target Vehicle was heading north on 1-93 from Dorchester, MA. Target Vehicle had previously been identified as a "stash" or hide vehicle for the DTO. Members of the DTO are believed to load Target Vehicle with narcotics in Dorchester, MA and then drive it to Manchester and park it in a fixed location where then "runners" will switch into another vehicle to facilitate illegal drug transactions throughout the day. When these runners start running out of narcotics, they will go to Target Vehicle and remove additional quantities of narcotics from inside of the vehicle, and deposit money from previous deals into Target Vehicle. The DTO is known to utilize mechanical hides within their vehicles to stash their narcotics.

11.    Detectives were aware that the DTO runner identified as "Chino" (hereafter, "CHINO") had previously been observed as the primary runner using Target Vehicle and that he also used a secondary vehicle, a Honda CRV (NH registration 5212560), to facilitate drug deals for the DTO. On the aforementioned date, while detectives observed Target Vehicle heading toward Manchester from Dorchester, they were able to locate the Honda CRV which was parked on Cypress St. at Clay St., which was unoccupied. Shortly after, Target Vehicle was observed parking in the area of the Honda CRV. CHINO was observed exiting Target Vehicle and walking to the Honda CRV. He entered into the Honda CRV and sat in the driver's seat for approximately 10 minutes while he manipulated something in the area of the center console. Additionally, the brake lights continued to go on and off, which, based on my training and experience, I believe to be possibly indicative of an individual manipulating a mechanical hide.

12.    The Honda CRV pulled away from the curb and drove past Target Vehicle before ultimately pulling over around the corner from Target Vehicle. CHINO exited the Honda CRV with a large white plastic bag in his right hand and walked over to the passenger seat of the Target Vehicle. CHINO was observed opening the passenger side door, placing the bag inside of the car, and then closing the door before returning to the Honda CRV and leaving the area. Based on observations, it was believed that CHINO delivered the Target Vehicle to NH as a stash vehicle and conducted an exchange between vehicles.

<u>Surveillance of Target Vehicle on January 19, 2023</u>

13.    On January 19, 2023, detectives observed, via mobile electronic device, Target Vehicle traveling north on I-93 from Massachusetts toward Manchester. Detectives immediately located the Honda CRV parked in the area of Cypress St. and found it unoccupied. Believing

Target Vehicle was going to come to the area of the Honda CRV to make an exchange, surveillance was set up on the Honda CRV.

14.    As Target Vehicle entered into Manchester, physical surveillance units were able to locate the vehicle and positively identified the driver as CHINO. Target Vehicle was followed to the area of a vehicle garage at 150 Wilson St. CHINO was observed exiting the Target Vehicle and speaking with an unknown Hispanic male. Approximately ten minutes later surveillance drove by Target Vehicle again, which was parked on the side of the garage, unoccupied. Units then went over to the Honda CRV, where they found CHINO sitting in the driver's seat. It was believed that CHINO received a ride from someone at the shop because he was not observed walking. After approximately ten minutes the Honda CRV traveled back to the garage where CHINO was observed exiting and speaking with the same Hispanic male.

<u>Surveillance of Target Vehicle February 9, 2023</u>

15.    On February 9, 2023 members of the Manchester Police Special Enforcement Division (SED) were conducting physical surveillance in the area of 468 Union St. at "La Esquina" restaurant. This surveillance was in reference to an investigation into the illegal sales of narcotics within the city of Manchester. The target of this investigation was known to law enforcement but had not yet been positively identified. A controlled purchase set up by law enforcement on February 7, 2023 had established that this target had sold illegal narcotics.

16.    As surveillance was initiated, detectives observed the target's vehicle parked in the parking lot immediately next to a maroon Chevrolet Impala (NH registration 5189596). This Impala was known to detectives as being used by runners of the captioned DTO which had been used to facilitate drug deals and other activities associated with this DTO.

6

17.    Undercover detectives entered into the restaurant, where they observed their primary target speaking with a known DTO member, Gabriel Remigio Hernandez (hereafter, "HERNANDEZ"). Moments later, CHINO was observed driving Target Vehicle and parking on Manchester St. around the corner from the restaurant. CHINO was observed entering into the restaurant where he began conversing with fellow DTO member HERNANDEZ and the other unidentified target. The undercover detective stated that it was apparent that the three individuals all knew each other by the way they were conversing.

18.    Investigators have discovered the Target Vehicle is very difficult to surveil based on the many individuals operating this vehicle, the intentional change of parking spots throughout the city, and increased level of counter surveillance utilized by members of this drug trafficking organization.

**USE OF TRACKING DEVICE TO FURTHER THE INVESTIGATION**

19.    Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute narcotics often use motor vehicles to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances use motor vehicles to transport controlled substances to various locations to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement to effectively conduct surveillance. The presence of a tracking device on a motor vehicle engaged in drug-related activity is beneficial

7

because it allows law enforcement to track the movement of the vehicle effectively, while decreasing the chance of detection.

20.     The installation and monitoring of a tracking device on the Target Vehicle would expand the limited capabilities of this investigation and would enhance investigators' ability to follow the movements of GIRGUS, STARKEY, RAMOS, AGUASIVIAS, CHINO and any unidentified co-conspirators while decreasing the chance of detection.   This affiant and other involved investigators plan to utilize this information to assist with the possible interdiction of future drug deliveries as well as to assist in identifying sources of supply, customers, stash locations, and locating other evidence that will assist us in learning the full nature and scope of the aforementioned individuals' criminal operation.

## AUTHORIZATION REQUEST

21.     Based upon the facts set forth above, I respectfully request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to, during both daytime and nighttime hours,[1] install/maintain a mobile tracking device in or on the Target Vehicle within the District of New Hampshire within ten (10) calendar days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

---

[1] Without authorization to install the tracking device during nighttime hours, investigators would likely be unable to surreptitiously install the device on the Target Vehicle.

8

22.     Because the occupants of the vehicle may sometimes park the Target Vehicle on private property, I further request authorization to enter onto private property and/or move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.   I request authorization to monitor the tracking device for a period of forty-five (45) days following the installation of the device, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

23.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing notification sooner may have an adverse result, as defined in 18 U.S.C. § 2705.   I would expect the investigation will remain in covert status for at least 90 days after tracking has concluded.   Providing sooner notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date: __**Feb 26, 2023**__

Time: __**3:47 PM, Feb 26, 2023**__

_____
The Honorable Andrea K. Johnstone
United States Magistrate Judge

10

**AFFIDAVIT IN SUPPORT OF APPLICATION**
**FOR TRACKING WARRANT**

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

**AGENT BACKGROUND**

1.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.   I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task 8force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.   Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.      During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.   I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.   I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes.  I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire.  In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking.   I have received hundreds of hours of training in the field of narcotic investigations and enforcement.  Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3.      I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2

**PURPOSE OF AFFIDAVIT**

5.    I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a GPS tracking device in or on the following vehicle (hereafter, "Target Vehicle"):

a.    A blue 2006 Cadillac SRX currently bearing New Hampshire license plate 5066226 and, according to New Hampshire Department of Motor Vehicle records, bearing vehicle identification number 1GYEE637560129860.

6.    Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] by Melissa Rey Ramos AKA "Ralphy" (date of birth ("DOB"): ▮▮▮/1988) (hereafter, "RAMOS"), Katie Girgus (DOB: ▮▮▮/93) (hereafter, "GIRGUS"), and Nicholas Starkey (DOB: ▮▮/1988) (hereafter, "STARKEY")—believed to be members of the same drug trafficking organization—and others yet unknown, and probable cause to believe that the use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7.    The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

3

**PROBABLE CAUSE**

Surveillance of Target Vehicle on June 29, 2022

8.      On June 29, 2022 members of the Manchester Police Department Special Enforcement Division (hereafter, "SED") conducted surveillance on the Target Vehicle. The vehicle was observed parked in the area of Walnut St. and Blodgett St. in Manchester, NH. An unknown Hispanic male was observed entering the driver side of the Target Vehicle, after approximately five minutes the Hispanic male exited and entered into the driver seat of a BMW parked nearby. The vehicle then traveled to the parking lot of Walmart at 725 Gold St. in Manchester. As investigators arrived to the parking lot, they immediately observed two individuals known to law enforcement to be involved in drug distribution walking in the parking lot: GIRGUS and STARKEY[1]. GIRGUS and STARKEY were observed walking into Walmart; at roughly the

---

[1] On June 22, 2022 SED conducted a controlled drug purchase utilizing a cooperating witness (hereafter, "CW-1"). At the direction of law enforcement CW-1 was instructed to call phone number 410-845-1080 identified to be the phone number for Melissa Rey RAMOS AKA "Ralphy". CW-1 called and placed an order; RAMOS then sent GIRGUS and STARKEY to meet with CW-1 to facilitate the drug transaction.   CW-1 has been cooperating with law enforcement since approximately June 2022. Prior to agreeing to cooperate with law enforcement CW-1 was arrested while attempting to purchase crack cocaine. In exchange for possible lenient treatment with respect to those charges, CW-1 agreed to cooperate with law enforcement officers and provided them with information about various drug traffickers. Since becoming a cooperating witness, CW-1 has utilized controlled substances on one occasion; CW-1 immediately admitted to the violation. Nevertheless, CW-1 has provided information related to criminal activity which has been corroborated by law enforcement and other witnesses – specifically the identification of individuals distributing controlled substances.   Although CW-1 has committed criminal violations since becoming a cooperating witness, law enforcement still believes the surreptitious recordings conducted by CW-1 accurately capture evidence of criminal activity by others. CW-1 has convictions for driving related offences and possession of controlled substances [F] (NH RSA 318-B:2, I).

4

same time, the Hispanic male from the BMW was observed walking into Walmart. A short time later all individuals were observed exiting Walmart and entering into the BMW.

9.       This BMW was then surveilled back to the area of Walnut St. and Blodgett St. STARKEY and the Hispanic male were observed exiting the BMW and walking to the Target Vehicle which had remained parked in the same spot. STARKEY entered the driver seat of the Target Vehicle and the Hispanic male entered the passenger seat. After approximately five minutes, the Hispanic male exited the vehicle and walked back toward the area of the BMW where GIRGUS remained. STARKEY was observed driving the Target Vehicle to the area of the BMW to pick up GIRGUS. The Hispanic male then drove the BMW away. Immediately after STARKEY picked up GIRGUS in the Target Vehicle, they travelled to another area of the city. The Target Vehicle pulled over to where an unknown male was observed approaching the driver's side window; the unknown male then walked away shortly thereafter. Based on my training and experience, I know individuals who distribute illegal drugs will often do so in public areas and meet for a short amount of time before parting ways.

10.      After this interaction GIRGUS and STARKEY were observed going to 371 Manchester St. in Manchester. STARKEY was observed exiting the vehicle and walking to the second floor of this address. Investigators had previously received a number of tips indicating this address was associated with drug distribution activity. STARKEY exited a short time later. GIRGUS and STARKEY were then observed driving the Target Vehicle to 106 Union St in Manchester. STARKEY exited the vehicle carrying a white plastic bag and entered through the front door of the address. A short time later, STARKEY was observed exiting the address.

5

Target Vehicle's Use in Connection with Controlled Drug Purchase on June 30, 2022

11.     On June 30, 2022, at the direction of law enforcement, CW-2[2] was instructed to call the phone number ███-1080 known to belong to "Ralphy", whom investigators later learned to be RAMOS, in order to purchase one "ball" (street vernacular for 3.5g of crack cocaine) and one "stick" (street vernacular for 10g of heroin/fentanyl). At approximately 5:36 PM, CW-2 placed the call and a Hispanic male answered the phone and instructed CW-2 that he would send a text message to CW-2 telling CW-2 where to go to complete the transaction. RAMOS then texted CW-2 saying "21 Waverly St"; "Tell them to park at the corner."

12.     Following this exchange of text messages between RAMOS and CW-2, law enforcement provided CW-2 with US currency and CW-2 was driven to the area of the address provided by RAMOS by an undercover officer.

13.     At approximately 6:16 PM, the Target Vehicle was observed driving down East Industrial Drive in Manchester. Investigators identified the occupants to be STARKEY and GIRGUS by visual inspection. A short time later, the Target Vehicle was observed arriving at the area of the undercover officer and CW-2's location. At this time, GIRGUS was observed exiting the Target Vehicle and walking over to the passenger door of the vehicle in which CW-2 was

---

[2] CW-2 has been cooperating with law enforcement since approximately April 2022. Prior to agreeing to cooperate with law enforcement, CW-2 was arrested for purchasing and possession of heroin and crack cocaine from members of the aforementioned drug trafficking organization. In exchange for possible lenient treatment with respect to those charges, CW-1 agreed to cooperate with law enforcement officers and provided them with information about various drug traffickers. Since becoming a cooperating witness, CW-2 has utilized controlled substances and been arrested for possession of a controlled substance on one occasion. CW-2 immediately admitted to this violation. Nevertheless, CW-2 has provided information related to criminal activity which has been corroborated by law enforcement and other witnesses – specifically the identification of individuals distributing controlled substances. Although CW-2 has committed criminal violations since becoming a cooperating witness, law enforcement still believes the surreptitious recordings conducted by CW-2 accurately capture evidence of criminal activity by others. CW-2 has convictions for Possession of a Controlled Drug [F] (NH RSA 318-B:2,I) and First Degree Assault (NH RSA 631:1).

seated. CW-2 opened the door, and GIRGUS was observed by the undercover officer to hand the drugs to CW-2, who then gave the money to GIRGUS. GIRGUS then returned to the Target Vehicle. Following the controlled transaction, CW-2 indicated that the purchased narcotics were packaged in the manner in which CW-2 was accustomed to receiving narcotics from RAMOS.

Target Vehicle's Use in Connection with Suspected Drug Activity on July 19, 2022

14.    On July 19, 2022 members of the Manchester Police Special Enforcement Division ("SED") were conducting physical surveillance on a red 2020 Jeep Grand Cherokee bearing Massachusetts vehicle registration 2ZTF21. This vehicle had been identified as being linked to the drug trafficking organization; the primary driver of the vehicle was later identified as RAMOS.[3] The Jeep Grand Cherokee was surveilled going to the area of Hall St. and Belmont St. in Manchester.  The Target Vehicle was parked there.  RAMOS exited the Jeep Grand Cherokee and proceeded to enter the Target Vehicle, occupying its driver seat. RAMOS then drove the Target Vehicle around the block and parked it on Green St. at Belmont St.

15.    Shortly after RAMOS was observed parking the Target Vehicle, investigators observed a Subaru arrive in the area. This Subaru was being driven by Daniel Beldin (hereafter, "BELDIN"). CW-1 previously informed investigators that "Dan" was the new runner, or drug courier, for RAMOS. CW-1 later positively identified "Dan" as Daniel BELDIN. RAMOS was observed exiting the Target Vehicle and walking over to the passenger window of BELDIN's vehicle.  After a few moments, RAMOS walked away from BELDIN's vehicle and returned to

---

[3] On July 25, 2022 SED observed the Hispanic male known to be the primary driver of this Jeep Grand Cherokee leaving the area of Coolidge Rd. A short time later, a Manchester Police Officer observed this vehicle commit a motor vehicle violation and performed a motor vehicle stop, ultimately identifying the individual to be RAMOS. Additionally, on July 25, 2022, SED investigators conducted a photo line-up with CW-1, who positively identified the individual known to CW-1 as "Ralphy" to be RAMOS. RAMOS was previously identified to be a higher ranking member of this drug trafficking organization based on the initial debrief of CW-1.

the Jeep Grand Cherokee, and was surveilled driving the vehicle to 21 Chamberlain St. in Dorchester, MA. Once there, RAMOS exited the vehicle and walked toward the rear of 21 Chamberlain Street.   RAMOS then returned to the Jeep Grand Cherokee shortly after and left the area.

<u>Challenges to Surveillance Posed by Various Drivers of the Target Vehicle</u>

16.     On July 29, 2022, members of SED observed the Target Vehicle in the area of Harvard St. and Belmont St. in Manchester. The Target Vehicle was occupied by an unknown Hispanic male. The unknown Hispanic male then drove the Target Vehicle to Summer St. and Belmont St. The Hispanic male exited the Target Vehicle and was picked up by BELDIN, who was operating a 2006 Gold Ford Fusion bearing New Hampshire vehicle registration 5127585. Beldin then dropped this Hispanic male off in the area of Harvard St. and Belmont St where he had previously picked up the Target Vehicle. The Hispanic male exited Beldin's vehicle and entered a 2000 red Mercedes S-Class bearing New Hampshire registration 4939914. It should be noted that this Mercedes Benz had previously been observed in front of 21 Chamberlain St through an electronic surveillance platform.

17.     Investigators have discovered the Target Vehicle is very difficult to surveil based on the many individuals operating this vehicle, the intentional change of parking spots throughout the city, and increased level of counter surveillance utilized by members of this drug trafficking organization.

## **USE OF TRACKING DEVICE TO FURTHER THE INVESTIGATION**

18.     Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute narcotics often use motor vehicles to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who

8

are engaged in the distribution of controlled substances use motor vehicles to transport controlled substances to various locations to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement to effectively conduct surveillance. The presence of a tracking device on a motor vehicle engaged in drug-related activity is beneficial because it allows law enforcement to track the movement of the vehicle effectively, while decreasing the chance of detection.

19.    The installation and monitoring of a tracking device on the Target Vehicle would expand the limited capabilities of this investigation and would enhance investigators' ability to follow the movements of GIRGUS, STARKEY, RAMOS, and any unidentified co-conspirators while decreasing the chance of detection.  This affiant and other involved investigators plan to utilize this information to assist with the possible interdiction of future drug deliveries as well as to assist in identifying sources of supply, customers, stash locations, and locating other evidence that will assist us in learning the full nature and scope of the aforementioned individuals' criminal operation.

## AUTHORIZATION REQUEST

20.    Based upon the facts set forth above, I respectfully request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described

9

investigation, to, during both daytime and nighttime hours,[4] install/maintain a mobile tracking device in or on the Target Vehicle within the District of New Hampshire within ten (10) calendar days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

21.     I further request authorization to move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.   I request authorization to monitor the tracking device for a period of forty-five (45) days following the installation of the device, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

22.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing notification sooner may have an adverse result, as defined in 18 U.S.C. § 2705.   I would expect the investigation will remain in covert status for at least 90 days after tracking has concluded.   Providing sooner notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

---

[4] Without authorization to install the tracking device during nighttime hours, investigators would likely be unable to surreptitiously install the device on the Target Vehicle.

/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date: **Aug 10, 2022**

Time: **7:29 PM, Aug 10, 2022**

The Honorable Andrea K. Johnstone
United States Magistrate Judge

11

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR TRACKING WARRANT

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

## AGENT BACKGROUND

1.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.  I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.  Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.      During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.  I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.  I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes.  I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire.  In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking.  I have received hundreds of hours of training in the field of narcotic investigations and enforcement.  Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3.     I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2

**PURPOSE OF AFFIDAVIT**

5.      I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the continued used and monitoring of a GPS tracking device currently installed on the following vehicle (hereafter, "Target Vehicle"):

   a.      A blue 2006 Cadillac SRX currently bearing Massachusetts license plate 4BFR54 and bearing vehicle identification number 1GYEE637560129860.

6.      Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] (the "Target Offenses") by Melissa Rey Ramos AKA "Ralphy" (date of birth ("DOB"): ███/1988) (hereafter, "RAMOS"), Katie Girgus (DOB: ███/93) (hereafter, "GIRGUS"), and Nickolas Starkey (DOB: ███/1988) (hereafter, "STARKEY")—believed to be members of a drug trafficking organization (DTO)—and others yet unknown, and probable cause to believe that continued use and monitoring of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7.      The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know

about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

**PROBABLE CAUSE**

8.      This Court previously authorized the installation of a tracking device on the Target Vehicle on August 10, 2022. The vehicle previously bore New Hampshire license plate 5066226, but the license plate has since been switched to Massachusetts plate 4BFR54.  I have attached the Court-signed copy of the affidavit in support of that tracking warrant as Exhibit A to this affidavit, and the Court-signed copy of the tracking warrant itself as Exhibit B to this affidavit. The content of the affidavit in support of that tracking warrant is hereby incorporated into this affidavit by reference.  The tracking warrant authorizes the use of the tracking device on the Target Vehicle only until September 24, 2022.

9.      Since the authorization of the installation of the device on the Target Vehicle, additional observations of the Target Vehicle provide probable cause that continued monitoring of the Target Vehicle will lead to further evidence that RAMOS and other members of the DTO under investigation are committing the Target Offenses, as follows:

10.      On August 16, 2022, while conducting surveillance of the Target Vehicle in the area of Harrison St. and Russell St. in Manchester, NH, investigators observed a red Mercedes bearing New Hampshire registration 4939914 circling the area of the Target Vehicle. Investigators were familiar with this Mercedes as it had been observed numerous times in the area of 21 Chamberlain St., Dorchester, MA, which is believed to be the "stash" house for the DTO under investigation. During this time, investigators also observed a white Ford Explorer bearing Tennessee registration 6X57k7 circling the area. The driver of this vehicle was immediately identified as DTO dispatcher RAMOS. Based on training and experience, the investigators believed Ramos to be conducting counter-surveillance techniques.

4

11.     A short time later, the Mercedes pulled over in front of the Target Vehicle and RAMOS pulled over next to the Mercedes. Moments later, an unknown individual entered the Target Vehicle and exited shortly thereafter.  The Mercedes and the Ford Explorer driven by RAMOS then departed the area in separate directions. Surveillance units later observed the Mercedes heading south on I-93 towards Massachusetts. Subsequently, investigators reviewed electronic surveillance showing the Mercedes in front of 21 Chamberlain St, Dorchester, MA.

12.     On September 17, 2022, while being monitoring by the GPS tracker application, the Target Vehicle was observed leaving the area of 21 Chamberlain St. and traveling to the area of Sutton Ave. in Dorchester, MA. Investigators know this address to be associated with the registered owner of a white Honda Pilot, which has been observed in Manchester, NH being operated by known members of the DTO, including Jhonattan Arias Jimenez ("JIMENEZ") and Jose Baez Mejia, AKA Alejandro Reyes Rosado ("MEJIA").[1] The Target Vehicle remained in the area of Sutton Ave. for approximately 30 seconds before returning to Chamberlain St.   Later in the day, the Target Vehicle was observed leaving Massachusetts and traveling to the area of 207 Agnes St. in Manchester, NH. Investigators are aware that this is the known address of a confirmed DTO runner, Maria Camacho ("CAMACHO").[2] The Target Vehicle remained in this

---

[1] JIMENEZ was identified as the "runner" during a controlled drug buy into his DTO on September 15, 2022. JIMENEZ had been known to be involved in drug activity in Manchester, NH prior to this incident. MEJIA had been observed driving around Manchester, NH and appearing to engage in drug activity. He was later arrested for disobeying an officer and provided the name of "Alejandro Reyes Rosado." On August 26, 2022, the aforementioned Honda Pilot was stopped departing from Ria Money Transferring Service at 425 Hall St, Manchester, NH. The occupants of the vehicle were identified by their Dominican driver's licenses as "Jhonattan Arias Jimenez" (JIMENEZ) and "Jose Bienvenido Baez Mejia" (MEJIA). MEJIA was in fact the same individual that identified himself as Alejandro Reyes Rosado during the 2021 arrest.

[2] Previously, on September 13, 2022 investigators had conducted a controlled buy-walk operation involving known DTO dispatcher, Melissa REY RAMOS, AKA "Ralphy". During this buy-walk, RAMOS informed the confidential source (CS) that the "girls" were coming. When

area for approximately 20 to 30 minutes before departing and ultimately returning to Chamberlain St. in Dorchester, MA.

13.    On September 19, 2022, while monitoring the GPS tracking device, investigators observed the Target Vehicle depart 21 Chamberlain St. and drive to the area of March Ave. in Manchester, NH. As the Target Vehicle parked, the white Ford Explorer bearing Tennessee registration 6X57k7 pulled up right next to the Target Vehicle. The Ford Explorer was once again being operated by RAMOS, who was accompanied by an unknown Hispanic male. The Target Vehicle was operated by a Hispanic female who had previously been identified as a part of the DTO. All three individuals were observed exiting their vehicles and walking into a T.J. Maxx department store in that area together.

14.    Physical surveillance was established inside of the T.J. Maxx where the three were observed walking together. A short time later, all three individuals exited the store and walked back toward their vehicles. The female entered the driver side of the Target Vehicle. RAMOS and the Hispanic male entered the Ford Explorer, before the Hispanic male exited and got into the Target Vehicle. Approximately 30 seconds later, the Hispanic male exited the Target Vehicle and re-entered the Ford Explorer. Both vehicles then traveled in separate directions from each other.

15.    The Target Vehicle was observed via the tracking application to travel directly back to 21 Chamberlain St. in Dorchester, MA. Additionally, the Ford Explorer was observed going to the residence of Katie GIRGUS on Harvard St. in Manchester, NH. GIRGUS is a known "runner", or drug courier, for RAMOS. The Explorer departed a short time later and headed south on I-93. Based my training and experience, I believe this was indicative of the Target Vehicle

---

the CS arrived at the predetermined meeting location, a black BMW operated by Maria CAMACHO arrived. CAMACHO then facilitated the drug transaction with the CS.

6

resupplying RAMOS with a quantity of drugs from the stash house on Chamberlain St. and RAMOS then leaving to resupply his main runner to be ready for the next day's orders.

**AUTHORIZATION REQUEST**

16.     Based upon the facts set forth above, I respectfully request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to, during both daytime and nighttime hours, continue to monitor and maintain a mobile tracking device on the Target Vehicle, and to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

17.     I further request authorization to move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.   I request authorization to monitor the tracking device for an additional forty-five (45) days following issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

18.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing notification sooner may have an adverse result, as defined in 18 U.S.C. § 2705.   I would expect the investigation will remain in covert status for at least 90 days after tracking has concluded.   Providing sooner notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an

7

opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date: **Sep 23, 2022**

Time: **12:52 PM, Sep 23, 2022**

The Honorable Andrea K. Johnstone
United States Magistrate Judge

8

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR TRACKING WARRANT

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

### AGENT BACKGROUND

1.	I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.   I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task 8force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.   Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.	During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.   I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.   I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes. I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire. In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking. I have received hundreds of hours of training in the field of narcotic investigations and enforcement. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3.      I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

**PURPOSE OF AFFIDAVIT**

5.      I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the renwed used and monitoring of a GPS tracking device currently installed on the following vehicle (hereafter, "Target Vehicle"):

    a.      A blue 2006 Cadillac SRX currently bearing Massachusetts

    license plate 4BFR54 and bearing vehicle identification number

    1GYEE637560129860.

6.      Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] (the "Target Offenses") by Melissa Rey Ramos AKA "Ralphy" (date of birth ("DOB"): ▇1988) (hereafter, "RAMOS"), Katie Girgus (DOB: ▇/93) (hereafter, "GIRGUS"), Nickolas Starkey (DOB: ▇/1988) (hereafter, "STARKEY"), Maria Camacho (DOB: ▇/1980) (hereafter, "CAMACHO"), Antonio Aguasivias (DOB: ▇/95) (hereafter, "AGUASIVIAS"), and Hilda German (DOB: ▇/91) (hereafter, "GERMAN")—believed to be members of a drug trafficking organization (DTO)—and others yet unknown, and probable cause to believe that continued use and monitoring of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7.      The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know

about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

## PROBABLE CAUSE

8. This Court previously authorized the installation of a tracking device on the Target Vehicle on August 10, 2022, and then again on September 23, 2022. The most recent tracking warrant authorized the use of the tracking device on the Target Vehicle until November 7, 2022. Although the tracking device remains on the Target Vehicle, investigators have ceased gathering tracking data and segregated the data gathered during the warrant period.

9. Since the authorization of the installation of the device on the Target Vehicle, additional observations of the Target Vehicle provide probable cause that renewed monitoring of the Target Vehicle will lead to further evidence that RAMOS and other members of the DTO under investigation are committing the Target Offenses, as follows:

10. On September 27, 2022, investigators were monitoring a mobile electronic device indicating that the Target Vehicle was traveling from 21 Chamberlain St, Dorchester, MA heading north on I-93 toward New Hampshire. After a period, the Target Vehicle was observed traveling to 207 Agnes St, Manchester, NH which is a known residence for one of this DTO's "runners", or drug couriers: Maria CAMACHO. Investigators were able to positively identify the driver as known DTO member: Hilda GERMAN. It should be noted that GERMAN had previously been observed meeting with other known drug runners from this DTO. As GERMAN arrived in the lot of 207 Agnes St, she briefly met with another known DTO vehicle belonging to DTO associate: Luis "Tony" MALDONADO. After a brief conversation MALDONADO left the area and GERMAN parked the vehicle and entered 207 Agnes St with a large black bag.

4

11.     At the same time, physical surveillance units observed known DTO "Dispatcher": Melissa Rey RAMOS aka "RALPHY" leave his known address on Coolidge Ave in Manchester and drive his vehicle directly to 207 Agnes St where he was also observed entering the door of 207 Agnes St.

12.     Shortly thereafter, the known DTO members were observed exiting 207 Agnes St. GERMAN entered the driver seat of Target Vehicle while RAMOS entered the passenger seat. Surveillance units observed RAMOS appearing to be manipulating something near the center console of the Target Vehicle.

13.     RAMOS was then observed exiting the Target Vehicle with a white plastic bag; he briefly met with occupants of another vehicle before returning to his vehicle. After making several more stops in Manchester, the Target Vehicle left and traveled back south toward Dorchester where it was ultimately observed parking back at 21 Chamberlain St.

14.     Later in the night, at 21 Chamberlain St, known DTO member Alejandro Jose Reyes ROSADO AKA Jose Bienvenido BAEZ MEJIA was observed exiting 21 Chamberlain St and retrieving a similar white plastic bag from the rear passenger seat.

15.     On October 6, 2022, investigators set up a controlled narcotics purchase into DTO dispatcher RAMOS. Prior to execution of the buy, surveillance was established at various DTO locations throughout Manchester, NH. During which time known DTO member Antonio AGUASIVIAS arrived in the area of 207 Agnes St in one vehicle and then entered into another vehicle. This vehicle then traveled to the area of Harvard St and Belmont St where AGUASIVIAS was dropped off and entered the driver seat of the Target Vehicle where it was then observed driving and parking in the area of Taylor St and Harvard St. After a short time, a vehicle registered to CAMACHO pulled behind the Target Vehicle. An individual was observed exiting this vehicle

and getting into Target Vehicle and then returning back to the passenger seat of CAMACHO's vehicle. Based on my training, experience, and familiarity with this investigation, I believe that AGUASIVIAS retrieved the Target Vehicle to retrieve the narcotics hidden inside of the vehicle prior to dropping them off with the occupants of CAMACHO's vehicle.

16.     A short time later, a cooperating witness ("CW-1") called CAMACHO, who informed CW-1 she was getting gas and would be at the predetermined meeting location to conduct the drug transaction. Physical surveillance was maintained on the vehicle registered to CAMACHO the entire time from when it met with AGUASIVIAS and the Target Vehicle.

17.     CAMACHO's vehicle was then observed picking up CW-1 at the predetermined meeting location. After the deal was conducted, CW-1 returned to investigators and provided them with two tied off plastic baggies containing a tan powdered substance consistent with the appearance of fentanyl.

**<u>AUTHORIZATION REQUEST</u>**

18.     Based upon the facts set forth above, I respectfully request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to, during both daytime and nighttime hours, monitor a mobile tracking device on the Target Vehicle, and to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

19.     I further request authorization to move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.  I request authorization to monitor the

6

tracking device for an additional forty-five (45) days following issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

20.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing notification sooner may have an adverse result, as defined in 18 U.S.C. § 2705.   I would expect the investigation will remain in covert status for at least 90 days after tracking has concluded.   Providing sooner notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date:   **Dec 2, 2022**

Time:   **1:29 PM, Dec 2, 2022**

The Honorable Andrea K. Johnstone
United States Magistrate Judge

7

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR TRACKING WARRANT

I, Federal Bureau of Investigation Task Force Officer Michael McGee, depose and state as follows:

## AGENT BACKGROUND

1.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.  I am currently a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for the New Hampshire Major Offender Task Force, which works to dismantle and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I have been assigned to this task force since March of 2021. Prior to joining the task force, I was assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence and apprehension of violent offenders with a special emphasis on criminal street gangs. I was assigned to the Anti-Crime Unit between November 2021 and March 2021.   Prior to joining the Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal street gangs within the city of Manchester. My duties within the Gang Prevention Unit consisted of apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I was assigned to the Gang Prevention Unit in June 2017.

2.      During my employment as a police officer, I have successfully completed the Manchester Police In-House Academy as well as the New Hampshire Police Standards and Training Council Academy located in Concord, New Hampshire.  I have received specialized investigatory training in numerous areas to include, gang investigations, drug investigations, criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang Investigators Association.  I have responded to, investigated, or participated in the investigation of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

1

related crimes. I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in Manchester, New Hampshire. In my current assignment I have tracked, interviewed, and investigated various persons, and otherwise spoken with several persons involved with gangs, violent crimes, and drug trafficking. I have received hundreds of hours of training in the field of narcotic investigations and enforcement. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by people engaged in the trafficking of illegal drugs.

3.    I have participated in all aspects of drug investigations, including physical and electronic surveillance, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4.    I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

**PURPOSE OF AFFIDAVIT**

5.     I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the renwed used and monitoring of a GPS tracking device currently installed on the following vehicle (hereafter, "Target Vehicle"):

   a.     A blue 2006 Cadillac SRX currently bearing Massachusetts license plate 4BFR54 and bearing vehicle identification number 1GYEE637560129860.

6.     Based on the information contained herein, there is probable cause to believe the Target Vehicle is being used to facilitate violations of 21 U.S.C. § 841 [Distribution of Controlled Substances] and 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] (the "Target Offenses") by Melissa Rey Ramos AKA "Ralphy" (date of birth ("DOB"): ████1988) (hereafter, "RAMOS"), Katie Girgus (DOB: ████93) (hereafter, "GIRGUS"), Nickolas Starkey (DOB: ████1988) (hereafter, "STARKEY"), Maria Camacho (DOB: ████1980) (hereafter, "CAMACHO"), Antonio Aguasivias (DOB: ████95) (hereafter, "AGUASIVIAS"), and Hilda German (DOB: ████91) (hereafter, "GERMAN")—believed to be members of a drug trafficking organization (DTO)—and others yet unknown, and probable cause to believe that continued use and monitoring of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

7.     The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know

3

about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested warrants.

## PROBABLE CAUSE

8.    This Court previously authorized the installation of a tracking device on the Target Vehicle on August 10, 2022, and then again on September 23, 2022 and December 2, 2022. The most recent tracking warrant authorizes the use of the tracking device on the Target Vehicle until January 16, 2023. The prior tracking warrant affidavits are attached hereto as Exhibit 1 and incorporated herein by reference.

9.    Since the authorization of the installation of the device on the Target Vehicle, additional observations of the Target Vehicle provide probable cause that renewed monitoring of the Target Vehicle will lead to further evidence that RAMOS and other members of the DTO under investigation are committing the Target Offenses, as follows:

10.    On December 28, 2022, at the direction of law enforcement, CW-1[1] was instructed to place a phone call into the known drug trafficking organization (DTO) dispatch phone number ████-9059. The purpose of this phone call was to order a "stick", or 10 g, of heroin/fentanyl. When CW-1 placed the phone call, the dispatcher requested that CW-1 send him an address for

---

[1] CW-1 has been cooperating with law enforcement since approximately June 2022. Prior to agreeing to cooperate with law enforcement, CW-1 was arrested while attempting to purchase crack cocaine. In exchange for possible lenient treatment with respect to those charges, CW-1 agreed to cooperate with law enforcement officers and provided them with information about various drug traffickers. Since becoming a cooperating witness, CW-1 has utilized controlled substances on one occasion; CW-1 immediately admitted to the violation. Nevertheless, CW-1 has provided information related to criminal activity which has been corroborated by law enforcement and other witnesses – specifically the identification of individuals distributing controlled substances.   Although CW-1 has committed criminal violations since becoming a cooperating witness, law enforcement still believes the surreptitious recordings conducted by CW-1 accurately capture evidence of criminal activity by others. CW-1 has convictions for driving related offences and possession of controlled substances [F] (NH RSA 318-B:2, I).

his runner "Chino" to meet CW-1. At this time, CW-1 informed the dispatcher to meet in the area of Ash St. and Webster St. in Manchester, NH.

11.  Shortly after the order was placed, surveillance was set up in the area of Ash St. and Webster St. Moments later, units observed NH 5212560 Silver Honda CRV pick up CW-1 who entered into the front passenger seat of the vehicle. This vehicle was then observed doing a short loop around the block before dropping CW-1 back off in the same area.

12.  CW-1 later provided investigators with two (2) tied-off plastic baggies containing a tan powder substance. CW-1 told investigators CW-1 was picked up by Chino, who instructed CW-1 to place the money on the center console where Chino then retrieved the two bags from the cup holder.

13.  Additionally, on December 27, 2022, the captioned Honda CRV was observed by surveillance units pull up to the area of Cypress St. and Clay St., which was where the Target Vehicle was also parked. Known DTO member Chino was observed exiting the CRV and entering into the driver seat of the Target Vehicle. After a short period of time, Chino exited the Target Vehicle and re-entered the CRV and drove away.

14.  The Target Vehicle has been used by this DTO as a stash vehicle. Members are believed to retrieve a large quantity of narcotics from ██Chamberlain St, Dorchester, MA in the morning and proceed to drive to Manchester, NH. The Target Vehicle is then parked in various locations in Manchester for "runners" (drug couriers) to come periodically throughout the day, in order to resupply their drug "stash" to continue doing drug transactions throughout the day.

15.  It should be noted that prior to the controlled drug purchase on December 28, 2022, investigators were monitoring a stationary electronic surveillance platform, watching ██ Chamberlain St., when they observed a male wearing a dark-colored jacket and black winter hat

5

holding a plastic bag walk from ▮ Chamberlain St. and enter into the Target Vehicle. The Target Vehicle then proceeded out of camera view. While monitoring the GPS tracking device, the Target Vehicle was observed driving from ▮ Chamberlain St. to Manchester, NH before being parked in the area of Somerville St. and Taylor St. Additionally, it should be noted that, during the course of the controlled buy, Chino appeared to be wearing a dark-colored jacket, green pants, and a black winter hat, consistent with that of the male observed leaving ▮ Chamberlain St. and driving away in the Target Vehicle.

**AUTHORIZATION REQUEST**

16.    Based upon the facts set forth above, I respectfully request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to, during both daytime and nighttime hours, monitor a mobile tracking device on the Target Vehicle, and to maintain, repair, and/or replace the tracking device as necessary, and to remove said tracking device from the Target Vehicle after the use of the tracking device has ended.

17.    I further request authorization to move the Target Vehicle in order to effect the repair, replacement, and removal of the tracking device.  I request authorization to monitor the tracking device for an additional forty-five (45) days following issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire:

18.    In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90

6

days after the end of the authorized period of tracking (including any extensions thereof) because

there is reasonable cause to believe that providing notification sooner may have an adverse result,

as defined in 18 U.S.C. § 2705.   I would expect the investigation will remain in covert status for

at least 90 days after tracking has concluded.   Providing sooner notice would seriously jeopardize

the ongoing investigation by prematurely revealing its existence and giving suspects an

opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential

witnesses, notify confederates, and change patterns of behavior.

/s/ Michael McGee
Michael McGee, Task Force Officer
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date: **Jan 13, 2023**

Time:  **7:41 PM, Jan 13, 2023**

The Honorable Andrea K. Johnstone
United States Magistrate Judge

7